Seney, C. J.
On the 23rd day of April, 1894, the defendant, William C. Tingle, entered into a contract in writing with one Charles McComb, whereby said McComb agreed to furnish the labor and material to alter and repair a certain dwelling owned by said Tingle, and which dwelling was situated on a lot located in the village of Columbus Grove, Putnam county, Ohio. For the labor and material thus to be furnished the said Tingle agreed to pay the sum of $500, as follows: By depositing immediately after the signing of said contract two notes of $250 each, with the cashier of a certain bank; said notes thus deposited to be for the use and benefit of the said McComb. The said 'McComb out of the proceeds of said notes thus deposited to be paid as the work progressed, and the said McComb to pay all discounts that might be necessary for the purpose of raising the money upon the notes thus deposited to make said payments as aforesaid. McComb fully performed his part of said contract, and Tingle has paid *709 the full contract price as provided by its terms. McComb purchased of the plaintiffs, Palmer & Crawford, a part of the materials that were used in the altering and repairing of said dwelling, but without any knowledge or notice on the part of Tingle that he bad so done. McComb has failed to pay Palmer & Crawford for- the'materials thus furnished. Palmer & Crawford have complied with the law of this state as amended April 13, 1894, to secure what is known as a mechanic’s lien, and by this proceeding seek to foreclose said lien, and pray for The' sale of the lot and dwelling of Tingle to pay the indebtnedness of McComb for the materials thus furnished. Are they entitled to such relief, is the question.
■From this statement offered it will be noticed that by the terms of the contract there is no contractual relation between the plaintiffs, Palmer & Crawford, and the owner of the premises, Tingle. In fact, the plaintiffs were unknown to Tingle, hence the relation of creditor and debtor cannot arise by the voluntary act of the parties. Prior to the enactment of the statute referred to, it was unknown in this state that a liability could be created against a party without his knowledge or consent, or that the legislature of the state could make contracts for parties, or create a liability against them other than such liabilities that might be created by what is known as “police regulation.” It appears we have been living in the “dark ages,” for we now find upon the statute books the following:
“Sec. 3184. A person who performs labor, or furnishes machinery or material for constructing, altering or repairing a boat, vessel or other water-craft, or for erecting, altering, repairing or removing a house, mill, manufactory, or any furnace or- furnace material therein, or other building, appurtenance, fixture, bridge or other structure, or for the digging, drilling, plumbing, boring, operating, completing or repairing of any gas-well, oil-well or any other well, or performs labor of any kind whatsoever, in altering, repairing or constructing any oil-derrick, oil-tank, oil or gas pipe line, or *710 furnishes tile for the drainage of any lot or land by virtue of a contract with, or at the instance of the owner thereof or his agent, trustee, contractor or sub-contractor, shall have a lien to secure the payment of the same upon such boat, vessel or other water-craft, or upon such house, mill, manufactory or other building or appurtenance,fixture, bridge or other structure, or upon such gas-well, oil-well, or any other well, or upon such oil-derrick, oil-tank, oil or gas pipe line and upon the material and machinery so furnished, and upon the interest, leasehold or otherwise, of the owner in the lot or land on which the same may stand, or to which it may be removed.;:
Which was enacted and became the law of the state on the 13th day of April, 1891, and is found in Vol. 91, page 135, of the Ohio Laws. From this section it will be noticed:
1st. It has no application to any or all kind of contracts, but is limited in the operation to a special class of contracts, viz: To persons who labor or furnish materials for the objects named in the act. This is certainly a discrimination in favor of and affording protection to a special class of citizens, which is not enjoyed by the citizens of the state in general.
2d. It places upon the owner of real estate a burden that is not borne by the owner of any other class of property.
3d, It denies to the owner of real estate the right to enjoy and possess property, and contract in relation thereto, as they may deem best, regardless of any “police regulation . ’'
As an illustration, suppose in this case Mr. Tingle could have procured the contractor to have furnished the material and performed the labor at a considerable less price by paying the cash in advance. We could not do so, for fear the conU’actor would not pay his sub-contractor and. material men and he, Tingle, would be compelled to pay the second time, thus denying to Tingle the right to enjoy and possess his property. It is said in answer to this, that Tingle could *711 require the contractor to protect him, by requiring an indemnity bond or surety that he, the contractor, would pay all sub-contractors and material men; but suppose the contractor could not furnish this security, then Tingle for his own protection would be required to contract with some one else, which is obnoxious to the principle of a free government. First, it tends to create a privileged class, viz: Parties that are enabled to furnish security, and by so doing, tends to monopoly, to the detriment of those not able to so do; and second, it denies to the owner the right to contract with whom he pleases. And all for what purpose — to secure the creditor against a contract he has made with his eyes •open, with a person the creditor alone has given credit .to, and who alone was willing to give the credit, and with whom the owner had nothing to do, and of whifch he had no knowledge.
4th. It denies to the owner of real estate the right to •contract with reference to his property other than upon a monied consideration. For illustration, in the case before us, Tingle agreed to pay two notes of $250 each. The contractor, McGomb, agreed to accept them. By force of this statute, even if Tingle still had the notes, Tingle would be compelled to pay the plaintiffs or have his projierty sold to pay them, thus forcing him to pay money where his contract called for the notes. . Another illustration': I own two lots-of value $300 each. I find a contractor who is willing to build me a house upon one of the lots, if I wall deed him the other. I cannot make this contract for fear the contractor will not pay his sub-contractor or materialmen; and if he fails to pay, the material men will enforce their, lien against all I have left, and then deprive me of the enjoyment and possession of my property, not by any act of mine — not by any act of dishonesty on my part — but by-the dishonest act of others, of which I had, and in the nature of things, could not have any knowledge.
*712 oth. It makes the owner of real estate security for the contractors, the person with whom he contracts, to the extent of defeating him in the enjoyment of his property. Could a more monstrous doctrine be enunciated? Just reflect upon it a minute. One party to a contract, by force of legislation, "made security that the other contracting party will perform his contract; in effect the owner contracting with himself. When will the liability-cease? How much is the surety liable for? No one on earth can tell except the contractor. There is no way the owner can ascertain his liability as surety, only from the contractor. If the contractor lies to him, he is at his mercy. When will the contractor be entitled to full payment? The owner may refuse to pay him. The contractor sues him. The owner answers, I don't know, if you have paid for all labor and material. The contractor' replied, I have paid. Judgment, rendered against owner. Contractor receives his money in full, and after all this precaution upon the part of the owner, a material man with a lien perfected within the time allowed by law, but not of record, when judgment is paid, enforces the lien, and the owner is obliged to pay the second time. Could there be a greater injustice to a person who has the misfortune to have his property in real estate? If he had had his property in stocks and bonds, this misfortune would not have befell him.
We are all of the opinion that section 8184-of the Revised Statutes as amended April 18, 1894, for the reasons stated, is in violation of section 1 of article 1 of the Bill of Rights, which reads:
- “All men are by nature free and independent and have-certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing- and protecting property,” etc.
Also in violation of section 2,- article 1, of the Bill of Rights, which reads:
“All political power is inherent in the people. Government is instituted for their equal protection and benefit.”
*713 Being in violation of these sections of the Bill of Rights, ..section 3184 is unconstitutional and void. We are sustained in these holdings by the Supreme Court of our state, in the case, of The Hocking Talley Coal Co. v. Hiram Rosser, reported in Weekly Law Bulletin, Vol. 84, No. 8, page 110, Bradbury, J. says: “Upon what principle can a rule of law rest which permits one party, or class of people, to invoke the action of our tribunals of justice at will, while the other party or another class of citizens does so at the peril of being made to pay an attorney fee, if an honest but unsuccessful defense should be interposed 7” * * * "A statute that imposes this restriction upon one citizen or class of citizens, only denies to him or them the equal protection of the law,” * * * “It is true that no provision of the constitution of 1851, declares in direct and express terms that this may not be done, but, nevertheless, it violates the fundamental principles upon which our government rest, as they are enunicated and declared by that instrument in the Bill of Rights. The first section of the constitution declares that the right to acquire, procure and protect property is inalienable, and the next section declares among other things that government is instituted for their equal protection and benefit.”
“Various phases of this subject have received attention in the foregoing cases (citations from other states) as wéll as in some others, to which we do not deem it necessary to refer. The general tendency of these authorities is towards the result which we have reached; but whether they do or do not support our conclusions, we are satisfied that the fundamental principles of government declared by our Bill of Rights, clearly and unequivocally prohibits legislation of the character of that involved in this case,”
Also the case of the State of Ohio ex rel. v. Howard Ferris, reported in Weekly Law Bulletin, Vol. 34, No. 10, page 208, where Burket, J., says:
“If government is instituted for the equal protection and benefit of the people, it follows that laws which are passed under a government so instituted, must likewise be for the equal protection and benefit of the people. This statute fails to protect equally the people who exercise the right and privilege of receiving or surrendering their property.”’
Leasure and Powell, for plaintiff.
Watts & Moon, and Wm. C. Tingle, for defendant.
Entertaining these views, there will be a finding and decree for defendant. The. petition will be dismissed, with costs. Judgment for costs, execution awarded and cause remanded for execution. The clerk of the court will enter on the Record of Liens a cancellation of this lien.
Day and Price, JJ., concur.